[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue before the court is whether stock options that have not vested, due to an alleged wrongful termination prior to the vesting date, constitute "wages" as defined in General Statutes § 31-71a (3) for the purpose of maintaining a claim for recovery of unpaid wages pursuant to General Statutes § 31-72.
This court finds that an employee may state a claim for unpaid wages under General Statutes § 31-72 when an employee's "wages" would have vested or accrued but for an employer's alleged wrongful termination in violation of this state's public policy. Accordingly, the defendant's motion to strike count three of the plaintiff's verified complaint is denied.
 FACTS
The plaintiff, Frank W. Pereira, alleges the following facts in his four-count verified complaint dated July 28, 1999. Pereira was employed by DSL.net, Inc. as Senior Vice President, Marketing and Sales. DSL's offer of employment to Pereira was made in a letter dated March 12, 1999, which listed Pereira's compensation package, which included stock options that afforded Pereira the opportunity to purchase certain quantities of DSL stock at a stated price and at a stated time.[1]
Pereira commenced working for DSL in March, 1999. DSL terminated Pereira's employment on May 10, 1999, before the first vesting date of the stock options. Pereira alleges that DSL wrongfully terminated him for CT Page 9253 refusing to participate in DSL's fraudulent representation to investors regarding the company's business plan in connection with an initial public offering of company stock.
Count one alleges a wrongful termination claim. Count two is a claim for breach of representations, breach of an employment agreement and breach of the covenant of good faith and fair dealing. Count three alleges DSL willfully refused to pay Pereira his stock options, and, pursuant to General Statutes § 31-72, he is entitled to double damages, costs and attorney's fees. Count four, in which Pereira requests injunctive relief, has been resolved by stipulation approved by the court, Pittman, J., on August 9, 1999.
On September 9, 1999, DSL filed a motion to strike accompanied by a memorandum of law. DSL is moving to strike count three of Pereira's verified complaint on the ground that it fails to state a claim under General Statutes § 31-72, because stock options that have not vested are not "wages" as defined by the statute. On December 2, 1999, Pereira filed a memorandum of law in opposition to the motion to strike, and, on April 12, 2000, DSL filed a reply brief in support of its motion to strike.
 I. DISCUSSION
Practice Book § 10-39(a) provides, in pertinent part: "Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading or part thereof." The trial court's role is to examine the contested count, construed in the favor of the pleader, to determine whether a legally sufficient cause of action has been stated. Napoletano v. CinnaHealthcare of Connecticut, Inc., 238 Conn. 216, 232-33, 680 A.2d 127
(1996), cert. denied, 520 U.S. 1103, 117 S.Ct. 1106, 137 L.Ed.2d 308
(1997).
DSL is moving to strike count three on the ground that it fails to state a claim for unpaid wages under General Statutes § 31-72 because unvested stock options are not wages as defined by the statute.[2] DSL contends that the definition of "wages" found in General Statutes §31-71a (3) contains the past tense of the word "rendered," and, therefore, an employee's alleged right to compensation must have vested in order to fall within the statutory definition of "wages." DSL asserts that Pereira's unpaid wage claim for stock options has not vested because his termination occurred ten months before the first scheduled vesting date of March, 2000. DSL relies on Swihart v. Country Home Bakers, Inc.,
CT Page 9254 Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 060945 (December 3, 1998, Corradino, J.). In that case, the court determined that a bonus and fringe benefits did not constitute "wages" within the meaning of General Statutes § 31-72 because the purported "wage" claim had not vested. Similarly, DSL contends that the stock options at issue in this case do not constitute "compensation for services rendered" within the meaning of the statute because they have not vested.
Initially, Pereira counters that DSL's motion is procedurally defective because it violates the well-established rule that a movant cannot move to strike selected paragraphs of a count but can only move to strike an entire count. Pereira argues that the motion improperly challenges only that portion of count three alleging statutory damages pursuant to General Statutes § 31-72, and not the entire third count, which he asserts alleges a breach of contract claim. Pereira contends that the motion to strike should be denied on the claimed procedural defect alone.
In response, DSL argues in its reply brief that it has properly moved to strike the entire third count and not merely a portion of that count. DSL refutes Pereira's assertion that count three alleges a claim for breach of contract. DSL contends that claims brought pursuant to General Statutes § 31-72 set forth a specific cause of action based on alleged violations of General Statutes §§ 31-71a to 31-71i and 31-76k
and, therefore, count three must stand or fall on whether the statutory requirements have been met. Alternatively, DSL argues that if Pereira can show that count three is a breach of contract claim, then paragraph thirty-eight of count three should be stricken because it unsuccessfully attempts to state a separate cause of action for unpaid wages under General Statutes § 31-72.
Before addressing the substantive merits of the parties' arguments, this court will first address the procedural objection to the motion to strike. "[W]here individual paragraphs standing alone do not purport to state a cause of action, a motion to strike cannot be used to attack the legal sufficiency of those paragraphs . . . A single paragraph or paragraphs can only be attacked for insufficiency when a cause of action is therein attempted to be stated." (Internal quotation marks omitted.)Mirjavadi v. Bakilzadeh, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 166632 (June 9, 1999, D'Andrea,J.). Count three, read in a light most favorable to the plaintiff, alleges a breach of employment agreement in paragraph 35 and alleges a claim for statutory damages under General Statutes § 31-72 in paragraph 38.[3] General Statutes § 31-72, entitled "Civil action tocollect wage claim, fringe benefit claim or arbitration award,"
CT Page 9255 provides, in relevant part, that "an employee or a labor organization [representing an employee] may recover, in a civil action" twice the full amount of unpaid wages, costs and reasonable attorney's fees. The statute provides an employee with an independent statutory right to bring an action to recover unpaid wages against an employer. The Supreme Court has interpreted the statute to provide an employee with a statutory right to pursue an unpaid wage claim after exhausting administrative remedies through any grievance procedures under any applicable collective bargaining agreements. See Shortt v. New Milford Police Dept.,212 Conn. 294, 310, 562 A.2d 7 (1989) (court construes General Statutes § 31-72 as a statute for wage collection coexisting with wage disputes subject to grievance procedures outlining collective bargaining agreements); Hoffman v. Corporate Display Spec. Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 284682 (May 4, 1992, Melville, J.) (denying a motion to dismiss, which attacked the court's subject matter jurisdiction over an employee's action to recover unpaid wages pursuant to General Statutes § 31-72 arguing that the employee failed to exhaust administrative remedies, upon finding that an employee without available recourse through the labor commission has "an independent right to bring a civil action" under the statute). Because paragraph 35 of count three alleges a breach of the employment agreement and paragraph 38 alleges a separate cause of action pursuant to General Statutes § 31-72, this court may properly treat the motion to strike as attacking paragraph 38, alone. See Mirjavadi v. Bakilzadeh, supra, Superior Court, Docket No. 166632.
Turning to the substantive arguments, Pereira argues that he has a vested right of ownership in the stock options. He asserts that the stock options were not intended as compensation for future services but were immediate compensation for his leaving a higher-paying position and foregoing other employment in order to work for DSL. He further asserts that the vesting schedule for the stock options merely specifies the dates on which he could exercise his right to purchase the stocks and has no bearing on whether his entitlement exists. He contends that the award of stock options is not conditional or discretionary, and, therefore,Swihart v. Country Home Bakers, Inc., supra, Superior Court, Docket No. 060945, the case on which DSL relies, is inapposite because the employee in that case was seeking a discretionary bonus and fringe benefits. Pereira also argues that if the court were to find that stock options are analogous to a discretionary bonus, then the stock options still constitute "wages" within the meaning of General Statutes § 31-72
because they would have vested but for his wrongful termination. He relies on various appellate cases, which recognize employees' rights to recover future wages where the employees were wrongfully discharged in violation of this state's public policies. He relies on these cases for the proposition that DSL's wrongful termination prevented him from CT Page 9256 exercising his stock options according to the vesting schedule and, therefore, he is entitled to recover the wages he would have earned but for the wrongful termination. Pereira notes that DSL is not challenging the wrongful termination of employment allegations, and that count three contains allegations that DSL's wrongful termination prevented his options from vesting.
As to the substantive merits of the parties' arguments, this court's determination of whether the unvested stock options constitute "wages" as defined in General Statutes § 31-71a (3), in order to state a claim for unpaid wages under General Statutes § 31-72, shall be guided by the statutory language itself, the principles of statutory construction and the legislative intent in enacting the statutes. General Statutes § 31-72 provides that "[w]hen any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section31-76k[4] or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action. . . ." General Statutes § 31-71a (3) defines the term "wages" contained in General Statutes § 31-72 as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." "A primary rule of statutory construction is that if the language of the statute is clear, it is presumed that the words express the intent of the legislature. . . . The court must interpret the statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . Each word used by the legislature should be given effect and, as far as possible, the entire enactment is to be harmonized." (Citations omitted; internal quotation marks omitted.) Ganim v. Roberts,204 Conn. 760, 763, 529 A.2d 194 (1987). "[T]he process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . [T]o determine, in a reasoned manner, the meaning of the statutory language. . . . [the court looks] to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Luce v. UnitedTechnologies Corp., 247 Conn. 126, 133, 717 A.2d 747 (1998)." (Citations omitted; internal quotation marks omitted.) Morales v. Pentec, Inc.,
CT Page 925757 Conn. App. 419, 426, ___ A.2d ___ (2000).
A review of the legislative history of General Statutes §§ 31-72 and31-71a, and the relevant amendments thereto, demonstrates that the primary purpose in enacting the statutes was to provide redress for employees denied earned wages.[5] See Conn. Joint Standing Committee Hearings, Labor, 1978 Sess., pp. 154-55. The legislative history also shows that the legislature, in amending the statute to provide double damages for recovery of twice the amount of unpaid wages, intended to penalize employers who failed to pay employees earned wages and to deter employers from withholding earned wages. Id. See also Butler v. HartfordTechnical Institute, Inc., 243 Conn. 454, 463, 704 A.2d 222 (1997) (where the court's interpretation of General Statutes § 31-72 "effectuates the statutory policies of compensating employees and deterring employers from failing to pay wages"). The legislative history further reveals that the legislature intended the double recovery provision to be remedial and punitive in nature and to constitute liquidated damages.[6] See 21 Sen. Proc., Pt. 6, 1978 Sess., p. 2144.
Connecticut's wage recovery statutes represent this state's public policy against the withholding of wages by employers. See Cook v.Alexander Alexander of Conn., Inc., 40 Conn. Sup. 246, 248, 488 A.2d 1295
(1985) (allegations that the plaintiff was discharged to avoid the vesting of bonuses and thrift plan benefits, which constitute unpaid wages within the meaning of General Statutes § 31-72, sufficient to allege a wrongful discharge claim); Okon v. Medical Marketing Group,Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 306032 (August 23, 1994, Pittman, J.) (12 Conn.L.Rptr. 228, 228-29) (adopted the reasoning of the court in Cook v. Alexander Alexander of Conn., Inc., supra, 40 Conn. Sup. 246, and found that "a complaint alleging that plaintiff's employment was terminated in order to prevent the vesting of certain rights to compensation [stock options] which, if vested, would be enforceable rights under Connecticut's wage protection statutes states a cause of action for wrongful termination"). "[T]he normal rule on an employment contract is that when the employee is prevented from fully performing because the employer wrongfully fired him, the employee can recover the wages he would have earned under the contract, minus any wages which he has earned or could have earned elsewhere, and the burden of proof of the latter is on the employer." (Internal quotation marks omitted.) Torosyan v. Boehringer IngelheimPharmaceuticals, Inc., 234 Conn. 1, 32-33, 662 A.2d 89 (1995) (recognizing an employee's right to recover future lost wages, where limited to a reasonable time and supported by the evidence, in a wrongful discharge action alleging breach of an implied employment contract); see also Preston v. Phelps Dodge Copper Products, Inc., 35 Conn. App. 850,859-61, 647 A.2d 364 (1994) (recognizing an employee's right to recover CT Page 9258 wages he would have earned but for being wrongfully terminated in violation of public policy); Butler v. Cadbury Beverages, Inc., Docket No. 3:97-CV-2241 (EBB), 1999 WL 464527, (D. Conn., June 30, 1999) (holding that an employee can state a claim under General Statutes §31-72 to recover a discretionary bonus that had not vested according to the terms of the employer's bonus plan because the employer's alleged wrongful termination proximately caused the employee's failure to fulfill a condition for the bonus to vest).
This court finds that an employee can state a claim under General Statutes § 31-72 wages the employee would have earned but was precluded from earning as a result of employer's alleged wrongful termination because the purpose of General Statutes § 31-72 is remedial, the statute must be liberally construed in favor of those persons whom the legislature intended to benefit, and the appellate courts recognize actions brought by employees seeking compensation for future wages they would have earned but for their termination. Accordingly, DSL's motion to strike count three is denied.
Howard T. Owens, Jr., Judge